## HOOT v. WALKER COUNTY LUMBER CO.
### (No. 545.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 14, 1920. Rehearing Denied March 3, 1920.)

1. MASTER AND SERVANT ⬳286(11) — EVIDENCE OF NEGLIGENCE IN FURNISHING UNFIT MULE HELD INSUFFICIENT TO GO TO JURY.

In an action by a mule team driver for injuries suffered when the mule which he was riding fell, evidence on the issue of negligence in furnishing a stiff, clumsy, and unfit animal *held* insufficient to go to the jury.

2. TRIAL ⬳139(1)—PROVINCE OF COURT AND JURY.

Where the evidence is such upon any issue of fact that reasonable minds might differ, the trial court should submit such issue to the determination of the jury.

Appeal from District Court, San Jacinto County; J. L. Manry, Judge.

Action by Cleveland Hoot against the Walker County Lumber Company. From a judgment for defendant entered on directed verdict, plaintiff appeals. Affirmed.

Wm. McMurrey, of Cold Springs, for appellant.
Crook, Lord, Lawhon & Ney, of Beaumont, for appellee.

HIGHTOWER, C. J. Appellant, Cleveland Hoot, brought this suit in the district court of San Jacinto county against the appellee, Walker County Lumber Company, claiming damages because of personal injuries alleged to have been sustained by him in consequence of alleged negligence on the part of appellee in furnishing him a defective mule to ride while performing the duties of his employment under contract with appellee.

Since no question arises upon the pleadings of the parties, we will state only substantially and briefly the allegations necessary to be considered in disposing of this case. Appellant alleged, substantially, that he was in the employ of appellee, hauling logs by means of a cart to which was hitched a team consisting of four mules, and that one of these mules, named "Wiley," was the saddle mule of the team, and that such mule was furnished appellant by appellee's foreman, with instructions to ride him while driving the team, and that the mule so furnished him was old, stiff, and clumsy, all of which was known to appellee and its foreman, or would have been so known by the exercise of proper care on their part, but was unknown to appellant. He then alleged that on the day that he claims to have been injured he was attempting to drive one wheel of the cart over the end of a log, to which he intended to fasten the cart, and while in the act of so placing the cart that the log could be fastened to it, and while upon the mule Wiley, said mule fell down and caused appellant to be thrown and precipitated to the ground and injured, that the mule fell for no other reason than that he was old, stiff, and clumsy, and that appellee was negligent in furnishing such a mule for his use, and that such negligence was the proximate cause of his injury. Appellee answered by general demurrer and general denial and by other special pleas unnecessary to mention. The case was tried with a jury, and upon conclusion of the evidence the trial court, over the protest of appellant, peremptorily instructed a verdict for appellee on the ground, as stated in the instruction, that no negligence on the part of appellee had been proved, as alleged by appellant. Motion for new trial was made by appellant and overruled, and the case is now properly before this court on appeal.

[1, 2] The only question for determination by this court is whether there was sufficient evidence adduced upon the trial to raise the issue of negligence, as pleaded by appellant.

We shall not undertake to quote literally the evidence bearing upon this point, but will state all the material portions of it substantially and fully. Appellant himself testified that he was an experienced man in the business or occupation in which he was engaged at the time of his injury, and had been following it for some three years; that he considered himself a fair judge of the fitness and suitability of mules to be used as the team which he was driving was being used at the time; that he had been working for appellee in the same capacity for some three months prior to his injury, but that the mule Wiley had not been in the team which he had been driving during that time, but that Wiley was put in his team on the day before the injury, and that he drove the team all that day with Wiley in it, but did not ride Wiley that day, but on the next morning he was told by appellee's foreman to ride Wiley and that in obedience to such instruction he put

his saddle on Wiley and rode him all the morning in the team, and made several trips in getting out logs, and that after so riding him about half a day the mule fell down with him, as above stated. Appellant further testified that on the day before the injury he had not observed anything in the actions or looks of the mule Wiley to indicate to him that the mule was clumsy or stiff or for any reason unfit for the service in which he was used, nor did he observe anything in this mule on the day that he was injured and before the injury that would indicate that the mule was stiff or clumsy, or in any manner unfit for the service, though he had then been riding him at least half a day. He further testified that Wiley was a large mule, weighing somewhere between 1,200 and 1,500 pounds, and that he was a good-looking mule, and that there was nothing in his appearance to indicate that he was stiff or clumsy or in any manner unfit for the service, and that judging from the looks of the mule and from what he had observed of him during the whole day he had been driving him before the injury, and during the half day that he had been riding him on the day of the injury, he would not have hesitated to furnish the mule Wiley to an employé such as appellant was to ride as appellant was riding him, had he (appellant) been appellee's foreman, whose duty it was to furnish such mules, etc. Appellant did say, however, that there was no obstruction of any kind which could have caused the mule to fall at the time he did fall, but that the place where he fell was clear and open, and that the mule fell because he was stiff and clumsy. This is substantially all of the material portions of appellant's evidence touching the question of the unfitness of the mule Wiley.

Another witness, Sam Stout, a cousin of appellant, was called to testify as to what he knew about the mule Wiley, and, since his testimony is not very lengthy, we will quote it in full, as follows:

"My name is Sam Stout, and I live near Evergreen. I have been living out there pretty near all my life. I have worked for the Walker County Lumber Company. I reckon I worked for them about eight or ten years driving a team.

"You say there is a mule named Wiley, alleged in the petition of plaintiff to have fallen with Cleveland Hoot and injuring him. I know that mule. I was working there at the time they bought him; Mr. Thompson, I believe, bought the mule. I do not recollect just how long they have had him; he had been there four or five years—something like that.

"I have driven that mule; I drove him about one month, I reckon. During that time he fell down with me once. As to whether I know if he had fell with the other men, well, I seen him fall; I seen all of them fall, the whole business, the saddle mules. I don't know whether the workmen generally liked to ride Wiley, this old mule; I know I did not.

"I know Mr. Woan Wood. He is here. He done a little of everything out there; he was setting grabs. He had not been there very long, I think; he commenced setting with me while I was driving. I recall I had been driving a month at that time; might not have been hardly so long. You asked me how long after that before Mr. Hoot was hurt; well, I think he taken the team I was driving."

Cross-examination:

"I am first cousin to Cleveland Hoot. I had driven this mule near about a month; yes, sir; continuously about a month; I reckon it was about a month. Cleveland Hoot taken the mule when I quit. Cleveland Hoot is the man that took the team that I had been driving, and had been driving it about a month. I rode Wiley last. Wiley fell down with me once during the whole month. I mean he bogged down with me; it was boggy weather. He bogged down with me, and the only time I am talking about his falling he bogged down with me. That is the only time he ever fell what time I drove him. During the whole time I drove him he never fell down except the time he bogged down with me.

"Q. Was he a safe mule—a saddle mule? A. I don't know, sir."

The above is the entire testimony having any tendency in the least to show that the mule Wiley was a defective mule—that is to say that he was old, clumsy, or stiff—and was therefore unfit for the service to which he was put at the time of appellant's injury. To meet such evidence, appellee introduced a number of witnesses, some of whom, it is true, were in the employ of appellee, but others were not in appellee's employ, and without undertaking to mention these witnesses by name, or discuss their testimony in detail, we are justified by the record in making the statement that, according to the testimony of all of them, the mule Wiley was an active, clear-footed, and very fit mule for the service to which he was being put at the time of appellant's injury. It was shown by these witnesses that all the drivers who had been in the employ of appellee preferred Wiley as a saddle mule over all the others of appellee's mules, and it was shown by all of them that this mule had never been known, either before or since the accident, to fall down under circumstances and in the manner as claimed by appellant. True, it was stated by some of them that Wiley, like all other mules, during wet seasons and in boggy woods had bogged down, along with the whole team of mules of which he was one, which was not an unusual occurrence in bad weather and boggy woods. But this would not tend even to indicate that this mule was stiff and clumsy or in any manner unfit as a saddle mule in a team. It was positively shown by several witnesses that Wiley was kept by appellee for at least four years subsequent to the injury complained of, and was used continuously and regularly

in the service which he was performing at the time of appellant's injury, and that at no time during the four years of such continuous service subsequent to appellant's injury was this mule known by any of the witnesses to have ever fallen down, as claimed by appellant. Let it be conceded that this mule did fall down on this one occasion, as claimed by appellant; yet it would not follow from that one fact that a jury would be authorized, in face of all the testimony in this record, to conclude that the mule was unfit for the service because he was old, stiff, and clumsy, and that appellee was guilty of negligence in furnishing him to be used by appellant.

We are not unmindful of the rule which obtains in this state to the effect that, where the evidence is such upon any issue of fact that reasonable and ordinary minds may arrive at different conclusions, then the trial court must submit such issues to the determination of the jury, but what we hold here is that the evidence is such that ordinary and reasonable minds could not honestly differ upon the issue, and that there was nothing for the trial court to do save to instruct the jury that the plaintiff had not proved his allegation of negligence, and that he was therefore not entitled to recover. The most that appellant could reasonably hope a jury to have determined in his favor upon the evidence was that the mule Wiley did in fact on this occasion 'fall down, but such finding would not necessarily mean that the mule was stiff and clumsy, or in any manner unfit for the service. As much might have happened to Alexander's Bucephalus, or Napoleon's Marengo, or Wellington's Copenhagen, or Sheridan's Rienzi, or Lee's Traveler, or Stonewall Jackson's Old Sorrel.

We think the trial court was correct in instructing a verdict for appellee in this case, and the judgment is affirmed.